# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

JEFFREY JOEL JUDY,　　　　　　　)
an individual,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　CASE NO.:　　2:14-CV-00178
　　　　　　　Plaintiff,　　　　　)
vs.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
GEORGIA DEPARTMENT OF　　　　　　)
NATURAL RESOURCES, a Political　　)
subdivision of the State of Georgia, and　)
BECKY KELLEY, in her Official Capacity, )
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　)
_____ )

## COMPLAINT

Plaintiff, JEFFREY JOEL JUDY, through his undersigned counsel, hereby files this Complaint and sues GEORGIA DEPARTMENT OF NATURAL RESOURCES, a political subdivision of the State of Georgia, and BECKY KELLEY, in her Official Capacity as the Director of the Georgia Department of Natural Resources' Parks, Recreation and Historic Sites Division, for compensatory damages, declaratory and injunctive relief, attorneys' fees, and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et*

*seq,* ("ADA") and 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act) and alleges as follows:

## JURISDICTION AND PARTIES

1. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.,* (see also 28 U.S.C. §§ 2201 and 2202) ("ADA"), and for Plaintiff's claims arising from 29 U.S.C. § 794, *et seq.,* ("Rehabilitation Act").   This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Rule 3.1, Local Rules of the United States District Court for the Northern District of Georgia.

3. Plaintiff, JEFFREY JOEL JUDY, (hereinafter referred to as "Mr. Judy" or "Plaintiff"), is a resident of Florida, though he has family in Georgia that he visits.

4. Plaintiff was injured in a motorcycle accident and is paralyzed from the waist down.   Due to his injuries, Mr. Judy is a T8-T9 paraplegic and uses a wheelchair for his primary means of mobility.

5.     Due to his disability, Plaintiff is substantially impaired in several major life activities including walking, standing and bending and requires a wheelchair for mobility.

6.     Defendant, GEORGIA DEPARTMENT OF NATURAL RESOURCES (hereinafter referred to as "GADNR"), is a political subdivision of the State of Georgia.   Upon information and belief, GADNR is the owner and/or operator of the real property, improvements, programs, services and activities which are the subject of this action, to wit: the Properties, known as the Unicoi State Park and Lodge ("Unicoi"), generally located at 1788 Highway 356, Helen, Georgia 30545 and Vogel State Park ("Vogel"), generally located at 405 Vogel State Park Road, Blairsville, Georgia 30512.

7.     Defendant, BECKY KELLEY ("Kelley"), is sued in her official capacity as the Director of the Department of Natural Resources' Parks, Recreation and Historic Sites Division ("PRHSD").   Upon information and belief, PRHSD and/or Kelley are the owner, operator, and/or administrator of the real property, improvements, programs, services and activities which are the subject of this action, to wit: the Properties, known as the Unicoi State Park and Lodge, generally

located at 1788 Highway 356, Helen, Georgia 30545 and Vogel State Park, generally located at 405 Vogel State Park Road, Blairsville, Georgia 30512.

8.      All events giving rise to this lawsuit occurred in the Northern District of Georgia, in White and Union Counties of Georgia.

## DEFENDANTS' PROPERTIES

9.      Upon information and belief, Unicoi State Park & Lodge is a 1,050-acre state park located immediately north-northeast of Helen, Georgia.    The centerpiece of the park is the 53-acre Unicoi Lake.    The park is especially popular in October, when the autumn leaves in the forest change colors.

10.      Unicoi offers many services, programs, and/or activities, including but not limited to: access to parks and recreation, camping, fishing, hiking, swimming, boating, picnicking, beach access, beach house access, group shelter access, pavilion access, restroom / Comfort Station access, Visitor Center access, laundry facilities, amphitheater access, RV use facilities, overnight stays at the lodges, and access to and dining at the Unicoi Lodge.    There are also intermittent special events, such as art exhibitions, historical lectures, and musical concerts.

11.      Upon information and belief, Georgia opened Unicoi in 1954.    Over the years, the park has grown dramatically.    These include, upon information and

belief, considerable renovations and new construction commenced after January 26, 1992.   In any event, even for Unicoi facilities/service/programs/activities pre-existing the ADA, the removal of the architectural barriers described below constitute reasonable modifications necessary to avoid discrimination against Plaintiff on the basis of disability, and such modifications would not fundamentally alter the nature of the services, programs, and/or activities offered at Unicoi.

12.   Upon information and belief, Vogel State Park is a 233-acre state park located at the base of Blood Mountain in Chattahoochee National Forest. Featuring streams, waterfalls, and a lake, Vogel at 2,500 feet is one of Georgia's highest altitude state parks.

13.   Vogel offers many services, programs, and/or activities, including but not limited to: access to parks and recreation, camping, fishing, hiking, swimming, boating, picnicking, lakeside activities, theater access, group shelter access, cafeteria shelter access, overnight stays at the cottages, pavilion access, Visitor Center access, miniature golf, dock access, Civilian Conservation Corps museum access, restroom / Comfort Station access, and beach access at Lake Trahlyta.   It also holds various annual events including a springtime wildflower walk, a fishing rodeo, a Fourth of July ceremony, and various music and arts festivals.

14.     Upon information and belief, Georgia opened Vogel in 1927.   Since then, the park has had a number of significant renovations.   These include, upon information and belief, considerable renovations and new construction commenced after January 26, 1992.     In any event, even for Vogel facilities/service/programs/activities pre-existing the ADA, the removal of the architectural barriers described below constitute reasonable modifications necessary to avoid discrimination against Plaintiff on the basis of disability, and such modifications would not fundamentally alter the nature of the services, programs, and/or activities offered at Vogel.

## COUNT I
## VIOLATION OF TITLE II OF THE
## AMERICANS WITH DISABILITIES ACT

15.     Plaintiff realleges and reavers the aforementioned paragraphs as if they were expressly restated herein.

16.     GADNR is a public entity, subject to the ADA, which owns, operates, and/or administers Unicoi, generally located at 1788 Highway 356, Helen, Georgia 30545 and Vogel, generally located at 405 Vogel State Park Road, Blairsville, Georgia 30512.

17.    PRHSD is a public entity, subject to the ADA, which owns, operates, and/or administers Unicoi, generally located at 1788 Highway 356, Helen, Georgia 30545 and Vogel, generally located at 405 Vogel State Park Road, Blairsville, Georgia 30512.    BECKY KELLY is the director of PRHSD in her official capacity.

18.    In June 2014, Plaintiff visited both Vogel and Unicoi for the first time.

19.    Plaintiff primarily traveled to the parks to assess their compliance with Title II of the ADA and the Rehabilitation Act.

20.    In addition to acting as a "tester", Plaintiff (who was accompanied by his roommate on this 'road trip'), travelled to Vogel and Unicoi to avail himself of the services, programs, and/or activities at the parks.

21.    Plaintiff plans to return to the Properties.

22.    First, Plaintiff intends to return to both properties to avail himself of the services, programs, and/or activities located thereat.

23.    Second, Plaintiff intends to return to the Properties as a tester to test the Properties' and Defendants' compliance with Title II of the ADA and Rehabilitation Act.

24.     Plaintiff plans to travel to the parks in the next year when he visits his stepson, who resides in the greater Atlanta area.

25.     Defendant violated (and continues to violate) Title II in three ways. *First,* per 28 C.F.R. § 35.150, with respect to the existing facilities at the Properties, Defendants do not operate its services, programs, and/or activities such that the service, program, and/or activities, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities, including Plaintiff.

a.     During the above described visit, Plaintiff experienced serious difficulty accessing the services, programs, and/or activities offered at the Properties.

b.     At Unicoi, the following services, programs, and/or activities, when viewed in their entirety, were not readily accessible to Plaintiff due to his disability: access to parks and recreation, camping, fishing, swimming, boating, picnicking, beach access, beach house access, group shelter access, pavilion access, restroom / Comfort Station access, Visitor Center access, amphitheater access, overnight stays at the lodges, and access to and dining at the Unicoi Lodge.

c.     At Vogel, the following services, programs, and/or activities, when viewed in their entirety, were not readily accessible to Plaintiff due to his

8

disability: access to parks and recreation, camping, fishing, swimming, boating, picnicking, lakeside activities, theater access, group shelter access, cafeteria shelter access, overnight stays at the cottages, pavilion access, Visitor Center access, miniature golf, dock access, Civilian Conservation Corps museum access, restroom / Comfort Station access, and beach access at Lake Trahlyta.

d.     Many of the services, programs, and/or activities that are not readily accessible to Plaintiff are of a type that can only be offered at a facility (e.g., mini-golfing can only occur at the mini-golf course, dining at the Lodge can only occur at the lodge, beach access can only occur by accessing the beach, etc.). These facilities are not readily accessible to and usable by individuals with disabilities because of the architectural barriers described in paragraphs 30-31 below, and therefore, the services, programs, and/or activities located at them are not, when viewed in their entirety, readily accessible to and usable by individuals with disabilities.

e.     The services, programs, and/or activities offered at the Properties, when viewed in their entirety, were and are not readily accessible to disabled individuals, including Plaintiff.

f.     Making these services, programs, and/or activities readily accessible to disabled individuals, including Plaintiff, would not result in a fundamental alteration in the nature of the service, program, and/or activity or in undue financial and/or administrative burdens.

26.    *Second,* per 28 C.F.R. § 35.151(a), the Properties contain facilities or parts of facilities, whose construction commenced after January 26, 1992, that are not readily accessible to and usable by individuals with disabilities, including Plaintiff.

a.     The facilities do not meet this standard because they do not comply with either 28 C.F.R. Part 36 App. A ("ADAAG") (1991 *and* 2010 versions), or 41 C.F.R. Part 101-19.6 App. A ("Uniform Federal Accessibility Standards" or "UFAS").   Upon information and belief, these include, but are not limited to, some of the architectural barriers described in paragraphs 30-31 below.

b.     These facilities were constructed by, were constructed on behalf of, and/or were constructed for the use of Defendants and the public.

27.    *Third,* per 28 C.F.R. § 35.151(b), the Properties contain facilities or parts of facilities that, after January 26, 1992, have been altered in a manner that affects or could affect the usability of the facility (or part thereof), where the

altered portions are not readily accessible to and usable by individuals with disabilities, including Plaintiff.

a.      The facilities do not meet this standard because the altered portions do not comply with either 28 C.F.R. Part 36 App. A ("ADAAG") (1991 *and* 2010 versions), or 41 C.F.R. Part 101-19.6 App. A ("Uniform Federal Accessibility Standards" or "UFAS").   Upon information and belief, these include, but are not limited to, some of the architectural barriers described in paragraphs 30-31 below.

b.      These facilities were altered by, were altered on behalf of, and/or were altered for the use of Defendants and the public.

28.     Unicoi contains numerous facilities to which the 'new construction' and/or 'alterations' standard applies.   Upon information and belief, these include, but are not limited to, the facilities implicated by the following projects:

a.      In or around 1995, construction relating to beach house floor covering occurred;

b.      In or around 1995, reconstruction of the dam / spillway occurred at an approximate cost of $107,000;

11

c.      In or around 1996, exterior lodge repairs occured, with an approximate cost of $300,000;

d.      In or around 1997, GADNR intended that Unicoi undergo approximately $100,000 in renovations, including areas relating to parking, restrooms, guest rooms, the entrance path of travel, camping, picnic shelters, the trading post, group camping, created / modified paths near the tennis area, and added rest station;

e.      In or around 2001, construction occurred with respect to four lodge rooms regarding the addition of roll-in showers and lever handle hardware;

f.      In or around 2001, construction occurred with respect to a cabin shower and kitchen modifications;

g.      In or around 2010-2011, restrooms at the trading post were modified;

h.      After August 8, 2011 but before November 14, 2013, the parking spaces near the bathroom building near the beach area were repainted;

i.      After August 8, 2011 but before November 14, 2013, signage was added at the parking spaces near the bathroom building near the beach area; and

j.      In or around 2013-2014, the Unicoi Lodge underwent a multi-million dollar massive renovation.

29.     Vogel contains numerous facilities to which the 'new construction' and/or 'alterations' standard applies.   Upon information and belief, these include, but are not limited to, the facilities implicated by the following projects:

a.      In or around 1994-1995, the parking lot near the CCC museum was resurfaced;

b.      In or around 1994-1995, the routes leading to Pavilion #2 were resurfaced;

c.      In or around 1994-1995, the routes leading to Pavilion #3 were demolished and rebuilt;

d.      In or around 1995, roofing repairs were undertaken;

e.      In or around 1995, interior renovation of rental cottages occurred;

f.      In or around 1995, doors were replaced, and a closer, threshold and lock were replaced at the office;

g.      In or around 1995, the lake trail was renovated;

h.     In or around 1995, construction / renovations were made to the entrance road;

i.     In or around 1995, approximately five cottage decks were replaced at an approximate cost of $263,000;

j.     In or around 1997, GADNR intended that Vogel undergo approximately $50,000 in renovations, including areas relating to parking, restrooms, the cottages, modification / addition of campsites, modifications to the parking near the beach / theater, repaving the path between the beach and theater, adding a ramp at the theater, adding bathroom signage, reconfiguring parking spaces at the group shelter, reconstructing access ramp to the miniature golf course;

k.     In or around 2004, GADNR received $35,000 in federal funding for construction / modifications at Bear Hair Gap Trial (and upon information and belief, this work was completed);

l.     In or around 2010-2011, GADNR modified a drinking fountain near the pavilion;

m.    After August 8, 2011 but before November 14, 2013, the parking lot in front of the Visitor's Center was repainted and access aisles / parking spaces were reconfigured;

14

n.      After August 8, 2011 but before November 14, 2013, the parking lot near the dock was repaved;

o.      In or around November 2013, roof construction occurred with respect to the Pavilion / Theater.

30.    <u>Unicoi State Park</u>: On his visit to Unicoi, Plaintiff encountered the following barriers making the facilities not readily accessible to and usable to persons with disabilities, and which further made the services, programs, and/or activities at the park, when viewed in their entirety, not readily accessible to and usable by individuals with disabilities.   These barriers, upon reasonable information and belief, violate the specific measurements provided in the 1991 ADAAG, 2010 ADAAG, *and* UFAS, and include (but are not limited to):

a.      inaccessible parking due to excessive slopes (violating 1991 ADAAG 4.6.3; 2010 ADAAG 208 and 502.4; and UFAS 4.6.3);

b.      inaccessible parking due to lack of properly mounted signage (violating 1991 ADAAG 4.6.4; 2010 ADAAG 208 and 502.6; and UFAS 4.6.4);

c.      inaccessible parking due to lack of proper access aisles (violating 1991 ADAAG 4.1.2 and 4.6.3; 2010 ADAAG 502.2, 502.3, and 502.4; and UFAS 4.1.1, and 4.6.3);

d.      inaccessible parking due to inadequate dimensions (violating 1991 ADAAG 4.1.2 and 4.6; 2010 ADAAG 208, 502.2, 502.3, and 502.4; and UFAS 4.1.2 and 4.6);

e.      inaccessible parking due to cracked pavement (violating 1991 ADAAG 4.3.6, 4.5.2, and 4.6.3; 2010 ADAAG 303.2 and 502.4; and UFAS 4.3.6, 4.5.2, and 4.6.3);

f.      inaccessible parking due to a lack of the required number of accessible spaces (violating 1991 ADAAG 4.1.2 and 4.6; 2010 ADAAG 208.2 and 502; and UFAS 4.1.1 and 4.6);

g.      inaccessible paths of travel due to excessive slopes and/or cross-slopes (violating 1991 ADAAG 4.3.7; 2010 ADAAG 403.3, and UFAS 4.3.7);

h.      inaccessible paths of travel due to abrupt changes in level (violating 1991 ADAAG 4.1.2, 4.3.8, and 4.5.2; 2010 ADAAG 206.2.4, 303, 403.2, and 403.4; and UFAS 4.1.1, 4.3.8, and 4.5.2);

i.      inaccessible paths of travel due to a lack of a firm surface (violating 1991 ADAAG 4.1.2, 4.3.6, and 4.5; 2010 ADAAG 206.2 and 403.2; and UFAS 4.1.2, 4.3.6, and 4.5);

j.     inaccessible paths of travel due to lack of proper handrails (violating 1991 ADAAG 4.8.5, 4.9.4, and 4.26; 2010 ADAAG 405.8, 504.6, and 505; and UFAS 4.8.5, 4.9.4, and 4.26);

k.     inaccessible curb cuts due to presence of vertical changes in level or "lips" (violating 1991 ADAAG 4.1.2, 4.3.8, 4.5.2, 4.7.2, and 4.7.4; 2010 ADAAG 206.2, 303, 403.4, 406.1 and 406.2; and UFAS 4.1.1, 4.1.2, 4.5.2, 4.7.2, and 4.7.4);

l.     inaccessible curb cuts due to excessive slopes and/or cross-slopes (violating 1991 ADAAG 4.1.2, 4.3.7, 4.7.2, 4.7.5, 4.8.2 and 4.8.6; 2010 ADAAG 206.2, 403.3, 405.2, 405.3, 406.1, 406.2, and 406.4 ; and UFAS 4.1.2, 4.3.7, 4.7.2, 4.7.5, 4.8.2 and 4.8.6);

m.     inaccessible curb cuts due to excessive side flare slopes (violating 1991 ADAAG 4.7.5.; 2010 ADAAG 406.3; and UFAS 4.7.5);

n.     inaccessible curb ramps due to a lack of level landings (violating 1991 ADAAG 4.7; 2010 ADAAG 406.4; and UFAS 4.7);

o.     inaccessible ramps due to lack of proper handrails (violating 1991 ADAAG 4.8.5 and 4.26; 2010 ADAAG 405.8; and UFAS 4.8.5 and 4.26);

p.      inaccessible ramps due to excessive slopes (violating 1991 ADAAG 4.7.2, 4.8.2, 4.8.5, 4.8.6, and 4.26; 2010 ADAAG 405.2, 405.3, 405.6, 405.8, 406.1, and 505; and UFAS 4.7.2, 4.8.2, 4.8.5, 4.8.6, and 4.26);

q.      inaccessible ramps due to a lack of level landings (violating 1991 ADAAG 4.8.4; 2010 ADAAG 405.7; and UFAS 4.8.4);

r.      inaccessible entranceways / doors due to a lack of proper maneuvering clearances (violating 1991 ADAAG 4.13; 2010 ADAAG 404.2.4; and UFAS 4.13);

s.      inaccessible service and/or payment counters due to excessive height (violating 1991 ADAAG 7.2; 2010 ADAAG 904.4; and UFAS 7.2);

t.      inaccessible restrooms due to lack of accessible routes to enter the restrooms (violating 1991 ADAAG 4.1.2, 4.1.3, 4.3.1, 4.3.2, and 4.3.8; 2010 ADAAG 206.1, 206.2, 206.2.2, 206.2.4, 303, and 403.4; and UFAS 4.1.1, 4.1.2, 4.3.1, 4.3.2, and 4.3.8);

u.      inaccessible restrooms due to a lack of proper knee and/or toe clearances (violating 1991 ADAAG 4.19.2; 2010 ADAAG 606.2; and UFAS 4.19.2);

18

v.  inaccessible restrooms due to a lack of proper faucet controls (violating 1991 ADAAG 4.19.5; 2010 ADAAG 606.4; and UFAS 4.19.5);

w.  inaccessible restrooms due to a lack of properly wrapped lavatory piping (violating 1991 ADAAG 4.19.4; 2010 ADAAG 606.5; and UFAS 4.19.4);

x.  inaccessible restrooms due to a lack of proper toilet stall maneuvering clearances and/or toilet configuration (violating 1991 ADAAG 4.17.3; 2010 ADAAG 604.3; and UFAS 4.17.3);

y.  inaccessible restrooms due to improperly placed / sized water closets (violating 1991 ADAAG 4.16 and 4.17.3; 2010 ADAAG 604.2, 604.3, and 604.4; and UFAS 4.16 and 4.17.3);

z.  inaccessible restrooms due to improper heights of urinals (violating 1991 ADAAG 4.18.2; 2010 ADAAG 605.2; and UFAS 4.18.2);

aa.  inaccessible restrooms due to excessively high counters (violating 1991 ADAAG 4.19.2; 2010 ADAAG 606.3; and UFAS 4.19.2);

bb.  inaccessible restrooms due to improper heights of restroom amenities (violating 1991 ADAAG 4.2.6, 4.16.6, 4.19.6, and 4.23.7; 2010 ADAAG 603.3, 603.4, and 604.7; and UFAS 4.2.6, 4.16.6, 4.19.6, and 4.23.7);

cc.     inaccessible restrooms due to missing and/or improperly placed / sized grab bars (violating 1991 ADAAG 4.16.4 and 4.26; 2010 ADAAG 604.5.2; and UFAS 4.16.4 and 4.26);

dd.     inaccessible restrooms due to missing and/or improperly placed signage (violating 1991 ADAAG 4.1.2, 4.1.3, and 4.30; 2010 ADAAG 216.8 and 703; and UFAS 4.1.1, 4.1.2, and 4.30);

ee.     inaccessible picnic table and seating areas due to lack of accessible route (violating 1991 ADAAG 4.1.2, 4.1.3, 4.3.1, 4.3.2, and 4.3.8; 2010 ADAAG 206.1, 206.2, 206.2.2, 206.2.4, 303, and 403.4; and UFAS 4.1.2, 4.1.3, 4.3.1, 4.3.2, and 4.3.8);

ff.     inaccessible picnic table and seating areas due to a lack of firm ground surfaces for the accessible route (violating 1991 ADAAG 4.1.2 and 4.3.6; 2010 ADAAG 206.2.4 and 403.2; and UFAS 4.1.2, 4.3.6, and 4.5);

gg.     inaccessible picnic table and seating areas due to inaccessible table dimensions (violating 1991 ADAAG 4.32; 2010 ADAAG 226, 305, 306, and 902; and UFAS 4.32);

hh.     inaccessible amphitheater viewing spaces due to the lack of proper wheelchair spaces and/or accompanying companion spaces (violating 1991

20

ADAAG 4.33.3 and 4.33.4; 2010 ADAAG 221.2 and 802; and UFAS 4.33.3 and 4.33.4);

   ii.   inaccessible primary function areas such as beaches and trails, which cannot be safely accessed by a person with a mobility impairment (violating 1991 ADAAG 4.1.2, 4.3.1, 4.3.2, 4.5.1, and 4.8.1; 2010 ADAAG 206.1, 206.2, 302.1, 403.2, and 405; and UFAS 4.1.1, 4.3.1, 4.3.2, 4.5.1, and 4.8.1); and

   jj.   inaccessible amenities such as water fountains and laundry facilities due to lack of accessible routes, improper clearances, and/or improper height (violating 1991 ADAAG 4.1.2, 4.3.6, 4.3.8, 4.5, 4.15.2, and 4.15.5; 2010 ADAAG 206.2.4, 303, 403.2, 403.4, 602.2, and 602.4; and UFAS 4.1.2, 4.3.6, 4.3.8, 4.5, 4.15.2, and 4.15.5).

   31.   <u>Vogel State Park</u>: On his visit to Vogel, Plaintiff encountered the following barriers making the facilities not readily accessible to and usable to persons with disabilities, and which further made the services, programs, and/or activities at the park, when viewed in their entirety, not readily accessible to and usable by individuals with disabilities.   These barriers, upon reasonable information and belief, violate the specific measurements provided in the 1991 ADAAG, 2010 ADAAG, *and* UFAS, and include (but are not limited to):

a. inaccessible parking due to lack of proper access aisles (violating 1991 ADAAG 4.1.2 and 4.6.3; 2010 ADAAG 502.2, 502.3.1, and 502.4; and UFAS 4.1.1 and 4.6.3);

b. inaccessible parking due to lack of properly mounted signage (violating 1991 ADAAG 4.6.4; 2010 ADAAG 502.6; and UFAS 4.6.4);

c. inaccessible parking due to improper dimensions (violating 1991 ADAAG 4.1.2 and 4.6.3; 2010 ADAAG 208.2, 502, 502.2 and 502.4; and UFAS 4.1.1., 4.6. and 4.6.3);

d. inaccessible parking due to excessive slopes (violating 1991 ADAAG 4.6.3; 2010 ADAAG 502.4; and UFAS 4.6.3);

e. inaccessible parking due to a lack of the required number of accessible spaces (violating 1991 ADAAG 4.1.2 and 4.6; 2010 ADAAG 208.2 and 502; and UFAS 4.1.1 and 4.6);

f. inaccessible parking due to cracked pavement (violating 1991 ADAAG 4.3.6, 4.5.2 and 4.6.3; 2010 ADAAG 303 and 502.4; and UFAS 4.3.6, 4.5.2, and 4.6.3);

g.      inaccessible parking due to designated spaces not located along the shortest possible route (violating 1991 ADAAG 4.6.2; 2010 ADAAG 502.3 and 502.7; and UFAS 4.6.2);

h.      inaccessible ramps due to a lack of level landings (violating 1991 ADAAG 4.8.4; 2010 ADAAG 405.7; and UFAS 4.8.4);

i.      inaccessible ramps due to lack of proper handrails (violating 1991 ADAAG 4.8.5 and 4.26; 2010 ADAAG 405.8 and 505; and UFAS 4.8.5 and 4.26);

j.      inaccessible paths of travel due to excessive slopes and/or cross-slopes (violating 1991 ADAAG 4.1.2, 4.3.1, 4.3.2, and 4.3.7; 2010 ADAAG 403.3; and UFAS 4.1.2, 4.3.1, 4.3.2, 4.3.3, and 4.3.7);

k.      inaccessible paths of travel due to abrupt changes in level (violating 1991 ADAAG 4.1.2, 4.3.8, and 4.5.2; 2010 ADAAG 303, 403.2, and 403.4; and UFAS 4.1.1, 4.1.2, 4.3.8, and 4.5.2);

l.      inaccessible paths of travel due to a lack of a firm surface (violating 1991 ADAAG 4.1.2, 4.3.6, and 4.5; 2010 ADAAG 206.2 and 403.2; and UFAS 4.1.2, 4.3.6, and 4.5);

m.      inaccessible paths of travel due to lack of proper handrails (violating 1991 ADAAG 4.8.5 and 4.9.4; 2010 ADAAG 405.8 and 504.6; and UFAS 4.8.5 and 4.9.4);

n.      inaccessible paths of travel to amenities (such as miniature golf course) due to excessively narrow width of route (violating 1991 ADAAG 4.1.2 and 4.3; 2010 ADAAG 403.5; and UFAS 4.1.2 and 4.3);

o.      inaccessible paths of travel due to inaccessible entranceways (violating 1991 ADAAG 4.1.3; 2010 ADAAG 206.4.1; and UFAS 4.1.3);

p.      inaccessible curb cuts due to excessive slopes and/or cross-slopes (violating 1991 ADAAG 4. 4.8.6; 2010 ADAAG 405.3; and UFAS 4.8.6);

q.      inaccessible ramps due to a lack of level landings (violating 1991 ADAAG 4.8.4; 2010 ADAAG 405.7; and UFAS 4.8.4);

r.      inaccessible ramps due to lack of proper handrails (violating 1991 ADAAG 4.8.5 and 4.26; 2010 ADAAG 405.8 and 505; and UFAS 4.8.5 and 4.26);

s.      inaccessible entranceways / doors due to a lack of proper maneuvering clearances (violating 1991 ADAAG 4.12 and 4.13; 2010 ADAAG 404.2.4; and UFAS 4.12 and 4.13);

t.      inaccessible service and/or payment counters due to excessive height (violating 1991 ADAAG 7.2; 2010 ADAAG 904.4; and UFAS 7.2);

u.      inaccessible restrooms due to a lack of proper knee and/or toe clearances (violating 1991 ADAAG 4.19.2; 2010 ADAAG 606.2; and UFAS 4.19.2);

v.      inaccessible restrooms due to lack of minimum maneuvering clearance at doors (violating 1991 ADAAG 4.13; 2010 ADAAG 404.2.4; and UFAS 4.13);

w.      inaccessible restrooms due to missing and/or improperly placed signage (violating 1991 ADAAG 4.1.2, 4.1.3, and 4.30; 2010 ADAAG 216.8 and 703; and UFAS 4.1.1, 4.1.2, and 4.30);

x.      inaccessible restrooms due to improper heights of urinals (violating 1991 ADAAG 4.18.2; 2010 ADAAG 605.2; and UFAS 4.18.2);

y.      inaccessible restrooms due to missing and/or improperly placed / sized grab bars (violating 1991 ADAAG 4.16.4 and 4.26; 2010 ADAAG 604.5.1 and 604.5.2; and UFAS 4.16.4 and 4.26);

z.      inaccessible restrooms due to a lack of proper toilet stall maneuvering clearances and/or toilet configuration (violating 1991 ADAAG 4.17.3 and 4.17.4; 2010 ADAAG 604.3 and 604.8; and UFAS 4.17.3 and 4.17.4);

aa.      inaccessible restrooms due to a lack of and/or improperly placed / sized water closets (violating 1991 ADAAG 4.1.2, 4.1.3, 4.16, 4.17.3, and 4.30; 2010 ADAAG 216.8, 604.2, 604.3, 604.4, and 703; and UFAS 4.1.1, 4.1.2, 4.16, 4.17.3, and 4.30);

bb.      inaccessible restrooms due to flush controls located on the wrong side of toilets (violating 1991 ADAAG 4.16.15; 2010 ADAAG 604.6; and UFAS 4.16.5);

cc.      inaccessible restrooms due to a lack of properly wrapped lavatory piping (violating 1991 ADAAG 4.19.4; 2010 ADAAG 606.5; and UFAS 4.19.4);

dd.    inaccessible restrooms due to improper heights of restroom amenities (violating 1991 ADAAG 4.2.6, 4.16.6, 4.19.6, and 4.23.7; 2010 ADAAG 603.3, 603.4, and 604.7; and UFAS 4.2.6, 4.16.6, 4.19.6, and 4.23.7);

ee.    inaccessible primary function areas such as lakeside activities, guest services, and seating, which can only be accessed via stairs (violating 1991 ADAAG 4.1.2, 4.3.1, 4.3.2, 4.5.1, 4.8.1, 4.9.4, and 4.9.6; 2010 ADAAG 206.1, 206.2, 206.2.2, 206.2.4, 504.6, and 504.7; and UFAS 4.1.1, 4.3.1, 4.3.2, 4.9.4, and 4.9.6);

ff.    inaccessible primary function areas such as lakeside activities, cottages, and seating thatlack accessible routes (violating 1991 ADAAG 4.1.2, 4.3.1, 4.3.2, 4.5.1 and 4.8.1; 2010 ADAAG 206.1, 206.2, 206.2.2, 206.2.4, 302.1, 403.2 and 403.3; and UFAS 4.1.1, 4.3.1, 4.3.2, 4.5.1 and 4.8.1);

gg.    inaccessible primary function areas such as lakeside activities, theatres, and seating that lack accessible ramps (violating 1991 ADAAG 4.8.1 and 4.8.2; 2010 ADAAG 405.1, 405.2, and 405.3; and UFAS 4.8.1 and 4.8.2); and

hh.    inaccessible primary function areas such as lakeside activities and seating due to lack of proper handrails (violating 1991 ADAAG 4.8.5; 2010 ADAAG 405.8; and UFAS 4.8.5).

32.    Insofar as the aforementioned barriers occurred in areas that had alterations following January 26, 1993, the alterations provisions of the 1991 ADAAG (4.1.6), 2010 ADAAG (28 CFR § 36.402), and UFAS (4.1.6) were likewise violated, as well as the alterations provisions of Title II generally.

33.    The continuing, ongoing, and illegal discrimination suffered by Plaintiff would be remedied if Defendant were to address and correct the barriers to access noted above, as it would allow Plaintiff meaningful and equal access to the parks and recreational activities.    The removal of these barriers are reasonable modifications that are necessary to avoid discrimination against Plaintiff and would not fundamentally alter the nature of the services, programs and facilities at the Properties.

34.    42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

35.    Defendants, sophisticated governmental entities with significant resources, either knew or should have knows of their lack of compliance with the ADA and Rehabilitations Acts.

36.    28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections…[t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination."   Defendants have violated this provision by providing their services, programs, and/or activities at inaccessible facilities.

37.    Defendants have discriminated against the Plaintiff by excluding him from participation in, and denying him the benefits of, the services, programs, and/or activities at their properties because of Plaintiff's disabilities, all in violation of 42  U.S.C § 12132.

38.    Furthermore, Defendants continue to discriminate against the Plaintiff by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to  afford  all  offered  goods, services, programs, activities, facilities, privileges, advantages or  accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

39.     Further, Defendants recognize that barriers to access occur at facilities that host programs, services, and activities at the Parks, yet refuse to remove those barriers even though the funds are available.

40.     The Plaintiff has been denied access to, and has been denied the benefits of services, programs and/or activities of Defendants' Properties, and has otherwise been discriminated against and damaged by Defendants' ADA violations, as set forth above.   The Plaintiff will suffer discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.   Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Defendants' Properties in order to catalogue and cure all the areas of non-compliance with the Americans with Disabilities Act.

41.     Defendants' discrimination against Plaintiff was intentional.

42.     Defendants' violations of Title II and the Rehabilitation Act display a deliberate indifference to the plight of Plaintiff and other similarly disabled individuals.   Defendants acted (or failed to act) with at least deliberate

indifference to the strong likelihood that a violation of Plaintiff's federally protected rights would occur.

43.    As a result of Defendants' violations of Title II and/or the Rehabilitation Act, the Plaintiff has suffered damages.

44.    Plaintiff has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

45.    Plaintiff is without adequate remedy at law and is suffering irreparable harm.

46.    Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant Plaintiff's injunctive relief including an order to alter UNICOI STATE PARK AND LODGE and VOGEL STATE PARK to make those facilities, services, programs, and/or activities readily accessible to and useable to the Plaintiff and all other persons with disabilities as defined by the ADA, or by closing the properties until such time as the Defendants cure their violations of the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

47.     Plaintiff realleges and reavers the aforementioned paragraphs as if they were expressly restated herein.

48.     Plaintiff brings this claim against Defendants, based upon the Rehabilitation Act, 29 U.S.C. § 794, et seq.

49.     The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCA § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

50.     As set forth herein, Defendants have violated the Rehabilitation Act by intentionally excluding the Plaintiff, solely by reason of his disabilities, from the participation in, and denying him the benefits of, and have otherwise subjected him to discrimination under Defendants' programs and activities.

51.     A non-exclusive list of Defendants' violations of the Rehabilitation Act and discriminatory conduct against the Plaintiff are evidenced by:

32

a.      denying Plaintiff access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered by Defendants;

b.      by otherwise limiting Plaintiff in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive Defendants' aids, benefits and services;

c.      making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by Defendants;

d.      failing to administer services, programs and activities in the most integrated setting appropriate to the needs of Plaintiff;

e.      excluding Plaintiff from participation in, and the benefits of, Defendants' services, programs and activities as a result of Defendants' facilities being inaccessible to or unusable by Plaintiff;

f.      offering programs, services, and/or activities solely at facilities that are not readily accessible to and usable by individuals with disabilities; and

g.    failing to design and/or construct new facilities, or alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

52.    Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at UNICOI STATE PARK AND LODGE and VOGEL STATE PARK, which Plaintiff is more likely than not going to encounter upon his future visits to the subject premises.    Plaintiff brings this action:

a.    to redress injuries suffered as a result of Defendants' discriminatory actions and inactions set forth herein;

b.    to reasonably avoid further and future injury to Plaintiff as a result of Defendants' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

c.    to ensure Defendants' facilities are accessible as required by the relevant applications of Title II of the ADA, and the Rehabilitation Act;

d.    to be made whole and ensure future compliance; and,

e.    to reasonably avoid future ADA and Rehabilitation Act litigation involving the same properties and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

34

53.     Only through a complete inspection of the properties and related facilities, undertaken by Plaintiff and/or his representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

54.     Upon reasonable belief, the Defendants are the recipient of federal funds.   As the recipient of federal funds, Defendants are liable for damages to the Plaintiff as a result of Defendants' acts and omissions constituting intentional discrimination.

55.     Upon further reasonable belief, Defendant has received federal funds in the programs and activities denied to Plaintiff (i.e. parks and recreation), as well as federal funds for projects at or relating to the Properties, during the relevant time period affecting Plaintiff's visit to the Properties.   This includes, but (upon information and belief), is not limited to, the following:

a.     In or around 1995-1997, GADNR received approximately $256,500 from the United States Department of the Interior to renovate and improve state parks in Georgia to increase accessibility for general outdoor recreation (Project # 13-789);

b.      In or around 1997-1999, GADNR received approximately $178,037 from the United States Department of the Interior to renovate and improve state parks in Georgia to increase accessibility for general outdoor recreation (Project # 13-791);

c.      Between 1995-1997, GADNR received $67,000 from the Land and Water Conservation Fund, administered by the U.S. Department of the Interior, for the ADA rehabilitation of the "comfort station" at Unicoi;

d.      Between 1997-1999, GADNR received $45,623 from the Land and Water Conservation Fund, administered by the U.S. Department of the Interior, for the ADA rehabilitation of the "comfort station" at Vogel;

e.      In or around 1998-1999, DNR received an education grant of approximately $9,929 from the Federal Highway Administration for trails education (Project # NRT-98(2));

f.      Between 2003-2006, GADNR received $35,000 from the Recreation Trails Program, administered by the U.S. Department of Transportation, for the construction, re-routing, and/or restoration of approximately 3 miles of the Bear Hair Gap Trail at Vogel State Park (Project # NRT-03 (14));

g.     Between 1998-2007, GADNR received $5,100 from the Recreation Trails Program, administered by the U.S. Department of Transportation, for general map development at Unicoi;

h.     Between 1998-2007, GADNR received $4,993.30 from the Recreation Trails Program, administered by the U.S. Department of Transportation, for general map development at Vogel;

i.     In or around 2013, GADNR Historic Preservation Fund received federal funding from U.S. Department of the Interior's National Park Service    (see    http://georgiashpo.org/node/2191;    see    also http://www.gmanet.com/Breaking News.aspx?CNID=80364);

j.     In many years, GADNR's Coastal Resources Division received federal funding from a myriad of federal agencies (see http://coastalgadnr.org/msp/fedap);

k.     Over the last 40 years, GADNR has received more than $75 million in federal funding through the Land and Water Conservation Fund (LWCF).  Georgia was made eligible for these funds based on approval of Georgia Statewide Comprehensive Outdoor Recreation Plan, which is managed by PRHSD, who in turn uses the funds to help state and local governments acquire,

develop and rehabilitate recreational facilities and resources (see http://gastateparks.org/item/152835); and

l.     Between 1993 and 2013, Georgia (and upon information and belief, GADNR) has received over $20 million in federal funding for the building of recreational trails from the Federal Highway Administration (see http://www.fhwa.dot.gov/environment/recreational_trails/funding/apportionments_obligations/recfunds_resc.cfm).

56.    Further, upon information and belief, the State of Georgia has received federal funds relating to parks and recreation, and GADNR, as a sub-division of the State of Georgia, is subject to the Rehabilitation Act because the State of Georgia is subject to the Rehabilitation Act.

57.    As set forth above, the Plaintiff has been denied access to, and has been, and without the relief requested herein will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by Defendants solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of the Defendants' Rehabilitation Act violations set forth above.

58.     Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action, and has agreed to pay his counsel reasonable attorneys' fees, including costs and litigation expenses, incurred in this action. Plaintiff is entitled to recover those attorneys' fees, costs and litigation expenses from Defendants pursuant to 29 U.S.C. § 794(b).

59.     Pursuant to 29 U.S.C. § 794(a), this Court is provided authority to grant Plaintiff injunctive relief including an order to alter the subject properties, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and granting the Plaintiff compensatory damages for Defendants' discriminatory actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants and requests the following:

A.     That the Court declare that Defendants are in violation of the ADA and Rehabilitation Acts;

B.      That the Court enter an Order enjoining the Defendants from continuing their discriminatory practices;

C.      That the Court enter an Order directing Defendants to alter and modify the subject premises, services, activities, and/or programs as appropriate to comply with the ADA and Rehabilitation Acts;

D.      That the Court award reasonable attorneys' fees, costs and litigation expenses incurred by Plaintiff and his attorneys,

E.      That the Court award Plaintiff an award of compensatory damages; and

F.      Such further relief that the Court deems to be just and proper.

DATED: August 6, 2014                    Respectfully Submitted,

**/s/ John A. Moore, Esq.**
Georgia Bar Number: 519792
Attorney for Plaintiff
The Moore Law Group, LLC
1745 Martin Luther King, Jr. Drive
Atlanta, Georgia 30314
Telephone: (678) 288-5601
Facsimile: (888) 553-0071
Email: jmoore@moorelawllc.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(b) in 14-point Times New Roman typeface.

**s/ John A. Moore, Esq.**
Georgia Bar Number: 519792
Attorney for Plaintiff

The Moore Law Group, LLC
1745 Martin Luther King, Jr. Drive
Atlanta, Georgia 30314
Telephone: (678) 288-5601
Facsimile: (888) 553-0071
Email: jmoore@moorelawllc.com